UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA

JUDY HEICKMAN

VERSUS

PENN NATIONAL GAMING, INC. ET AL

CIVIL ACTION

22-304-SDD-RLB

### RULING

This matter comes before the Court on the *Motion for Summary Judgment*[1] jointly filed by Defendants PNK (Baton Rouge) Partnership ("L'Auberge Hotel" or "PNK") and Zurich American Insurance Co. ("Zurich")[2] and the *Motion for Summary Judgment*[3] jointly filed by Carlisle Food Services Products, Inc. ("CFS Brands"), Chubb National Insurance Company ("Chubb"), and Federal Insurance Co.[4] Plaintiff, Judy Heickman (the "Plaintiff" or "Heickman") filed an *Opposition*[5] to Defendant PNK's Motion, but the motion filed by Defendant CFS Brands is unopposed by Plaintiff. Defendant PNK also filed a cross claim against Defendants CFS Brands, Chubb, and Federal Insurance Co. and these defendants filed a *Motion for Summary Judgment*.[6] For the reasons that follow, Defendant PNK's Motion will be denied and Defendant CFS Brands' Motions will be granted.

---

[1] Rec. Doc. 38.
[2] PNK (Baton Rouge) Partnership does business as L'Auberge Casino and Hotel Baton Rouge and the Complaint alleges that Zurich insured Defendant PNK at all relevant times. The Court will refer to this joint motion as PNK's motion for simplicity.
[3] Rec. Doc. 37.
[4] Carlisle Food Services Products, Inc. does business as CFS Brands and the Complaint alleges that Chubb and/or Federal Insurance Co. insured Defendant CFS Brands at all relevant times. The Court will refer to this joint motion as well as the motion on the cross claim as CFS Brands' motions for simplicity.
[5] Rec. Doc. 40.
[6] Rec. Docs. 30, 39.

I.  **BACKGROUND AND PROCEDURAL FACTS**

Plaintiff filed suit against PNK under a general negligence theory and against CFS Brands pursuant to Louisiana Products Liability Act (the "LPLA").[7] PNK filed a cross claim against CFS Brands alleging CFS Brands breached its express warranty and arguing that if PNK is found liable to Plaintiff, CFS Brands must also be liable because the breach proximately caused PNK's liability.[8] On July 12, 2023, CFS Brands moved for summary judgment to dismiss Plaintiff's claims.[9] Plaintiff has not filed an opposition. On September 25th, PNK also moved for summary judgment to dismiss Plaintiff's claims to which Plaintiff filed an opposition.[10] On September 29th, CFS Brands moved for summary judgment to dismiss PNK's cross claims and PNK failed to file an opposition.[11] In short, summary judgment as to the Plaintiff's claims and PNK's cross claim against CFS Brands are unopposed.

The events leading to this action occurred in May 2021 when Plaintiff stayed at the L'Auberge Casino and Hotel Baton Rouge.[12] The hotel invited Plaintiff, along with several other gamblers, to stay at the hotel and participate in group social activities.[13] The L'Auberge Hotel provided the airfare, bus transportation, room, and organized activities for the gamblers' trip in anticipation that the gamblers would do significant gambling while staying at the hotel.[14]

---

[7] Rec. Doc. 1-2.
[8] Rec. Doc. 30.
[9] Rec. Doc. 37.
[10] Rec. Doc. 38.
[11] Rec. Doc. 39.
[12] Rec. Doc. 1-2, p. 5.
[13] Rec. Doc. 38-4, p. 37, lines 6–24.
[14] *Id*.

On May 5, 2021, Plaintiff flew from San Antonio to New Orleans and arrived at the hotel the same day.[15] The L'Auberge Hotel hosted a tequila pairing party on May 5th, which began at 7 p.m. that evening.[16] Plaintiff ate scrambled eggs at home before catching her flight to New Orleans. She did not have anything else to eat before the party.[17] Plaintiff suffers from Celiac, an autoimmune disease which prevents her from eating gluten.[18] She did not receive food on her flight to New Orleans and abstained from eating once she arrived to the hotel because "all [the hotel] had was sandwiches."[19] At the party, the L'Auberge Hotel served a variety of food. Plaintiff drank a sip of tequila and only ate corn and grilled steak at the party because she could not eat the other provided food due to her autoimmune disease.[20] Plaintiff claims that the steak was "tough."[21] The following day, Plaintiff ate another meal at the hotel, but cannot remember what exactly she ate.[22] On May 7th, Plaintiff woke up to "instant pain, like, fire/acid in [her] stomach."[23] The pain "spread through [her] whole abdomen within a matter of seconds."[24] Plaintiff described the pain as "excruciating" and "different from any celiac[-related] pain. . . ."[25] Also on May 7th, Plaintiff asked the hotel staff where the nearest hospital was, but she did not report her pain to any staff at the hotel and did not seek medical attention until she returned to San Antonio.[26] That same day, the hotel scheduled a group tour to the

---

[15] *Id.* at p. 38, line 25–p. 39, line 8.
[16] *Id.* at p. 39, lines 9–14.
[17] *Id.* at p. 43, lines 2–4.
[18] *Id.* at p. 42, lines 16–18; p. 22, lines 18–25.
[19] *Id.* at p. 42 lines 11–12, 18–19.
[20] *Id.* at p. 39, lines 18–24.
[21] *Id.* at p. 45, line 24.
[22] *Id.* at p. 41, line 17–p. 42, line 4; p. 60, lines 16–18.
[23] *Id.* at p. 24, lines 8–10.
[24] *Id.* at p. 24, lines 11–12.
[25] *Id.* at p. 24, lines 16–25.
[26] *Id.* at p. 27, lines 17–22.

Houmas House Mansion.[27] Plaintiff took four Extra Strength Tylenol and attended the tour.[28] However, she did not eat the meal served and left the tour early. She claims that she could not sit or lay down.[29] Plaintiff returned to her hotel room and did not participate in any other activities or gambling that day.[30]

Plaintiff asserts that she did not seek medical attention while in Baton Rouge because she had a previously scheduled appointment with her treating gastroenterologist upon her return to San Antonio and she wanted to see him for the pain.[31] On May 9th, Plaintiff returned to San Antonio, and on May 11th, Plaintiff attended her regularly scheduled appointment with her gastroenterologist.[32] She underwent a CAT scan, which showed a wire protruding from her colon and she was directed to emergency surgery.[33]

However, Plaintiff's surgery was delayed because she was on blood thinners.[34] While awaiting surgery Plaintiff was placed on "very strong antibiotics."[35] On May 19th the wire and part of her colon was surgically removed.[36] Plaintiff returned home from surgery the same day. She slept in a recliner for two because it was painful for her to lie down.[37] Plaintiff did not receive any post-operative therapy but testified that, for "at least six months, [she] had no energy whatsoever."[38] Plaintiff claims she always had "lots of digestive problems" but that "it seems to have gotten worse," and she has been

---

[27] *Id.* at p. 28, lines 17–18.
[28] *Id.* at p. 28, lines 19–20.
[29] *Id.* at p. 28, lines 24–25.
[30] *Id.* at p. 29, lines 1–7.
[31] *Id.* at p. 25, lines 3–6.
[32] *Id.* at p. 25, lines 19–25.
[33] *Id.* at p. 32, lines 7–12.
[34] *Id.* at p. 32, lines 21–25.
[35] *Id.* at p. 33, line 6.
[36] *Id.* at p. 33, lines 9–17.
[37] *Id.* at p. 34, lines 8–12.
[38] *Id.* at p. 35, lines 5–6.

experiencing pain in her lower stomach.[39] Following the surgery, Plaintiff kept the wire but has not had it tested.[40]

Plaintiff believes that the wire originates from a grill brush used by the chefs at the L'Auberge Hotel, and she ingested the wire at the tequila pairing party. Her belief stems from her gastroenterologist and her surgeon informing her that it would take 24 to 48 hours for the wire to pass through her system, and she felt physical pain two days after the party.[41] She also believes the wire was either in the corn or the grilled steak because those were the only foods she ate at the party.[42] As a result, Plaintiff filed this action against PNK, claiming the L'Auberge Hotel acted negligently.[43] Plaintiff also asserts claims against CFS Brands, alleging CFS Brands manufactured the grill brush used by L'Auberge Hotel and that the brush was unreasonably dangerous and defective under the LPLA.[44] These Defendants now move for summary judgment.

## II. LAW AND ANALYSIS

### A. Summary Judgment Standard

Summary Judgment should granted if the record, taken as a whole, "together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."[45] The Supreme Court has interpreted the plain language of Rule 56(c) to mandate "the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case,

---

[39] *Id.* at p. 35, lines 19–20.
[40] *Id.* at p. 43, lines 7–10.
[41] *Id.* at p. 45, lines 16–21.
[42] *Id.* at p. 46, lines 3–10.
[43] Rec. Doc. 1-2.
[44] *Id.*
[45] *Basil v. Dow Chem. Co.*, 2020 WL 1964155, at *1 (M.D. La. Apr. 23, 2020).

and on which that party will bear the burden of proof at trial."[46] A party moving for summary judgment "must 'demonstrate the absence of a genuine issue of material fact,' but need not negate the elements of the nonmovant's case."[47] If the moving party "fails to meet this initial burden, the summary judgment must be denied, regardless of the nonmovant's response."[48]

If the moving party meets this burden, Rule 56(c) requires the nonmovant to go beyond the pleadings and show by affidavits, depositions, answers to interrogatories, admissions on file, or other admissible evidence that specific facts exist over which there is a genuine issue for trial.[49] The nonmovant's burden may not be satisfied by conclusory allegations, unsubstantiated assertions, metaphysical doubts as to the facts, or a scintilla of evidence.[50] Factual controversies are to be resolved in favor of the nonmovant, "but only when there is an actual controversy, that is, when both parties have submitted evidence of contradictory facts."[51] The Court will not, "in the absence of any proof assume that the nonmoving party could or would prove the necessary facts."[52] Unless there is sufficient evidence for a jury to return a verdict in the nonmovant's favor, there is no genuine issue for trial.[53]

### B. CFS Brands' Motion and Local Rule 7(f)

Local Rule 7(f) of the Middle District of Louisiana requires that memoranda in opposition to a motion be filed within twenty-one (21) days after service of the motion.

---

[46] *Id.* (quoting *Celotex Corp. v. Corbett,* 477 U.S. 317, 322 (1986)).
[47] *Id.* (citing *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994)).
[48] *Id.* (quoting *Little*, 37 F.3d at 1075).
[49] *Id.* at *2.
[50] *Id.*
[51] *Id.* (quoting *Little*, 37 F.3d at 1075).
[52] *Id.* (quoting *McCallum Highlands v. Washington Capital Dus, Inc.*, 66 F.3d 89, 92 (5th Cir. 1995)).
[53] *Id.*

Plaintiff failed to timely oppose CFS Brands' motion which was electronically filed on July 12, 2023. Under the Federal Rules of Civil Procedure and the Local Rules of Court, Plaintiff was required to file an opposition no later than August 2, 2023. At no time did Plaintiff request an extension of time to oppose this motion. Therefore, the pending motion is deemed to be unopposed and further, after reviewing the record, the Court finds that the motion has merit, particularly because CFS Brands' Statement of Uncontested Facts is uncontroverted, and the summary judgment evidence submitted supports CFS Brands' argument.

To prevail under any theory under the LPLA, a plaintiff must establish four elements: (1) defendant manufactured the product at issue, (2) plaintiff's injury was proximately caused by a characteristic of the product, (3) this characteristic made the product unreasonably dangerous, and (4) plaintiff's injury arose from a reasonably anticipated use of the product by plaintiff or someone else.[54] The LPLA specifies four instances when a product is "unreasonably dangerous": (1) in construction or composition, (2) in design, (3) when the manufacturer has not provided an adequate warning about the product, and (4) when the product does not conform to an express warranty of the manufacturer about the product.[55] Defendant CFS Brands concedes it manufactured the grill brush used by the L'Auberge Hotel's kitchen staff.[56] However, CFS Brands argues Plaintiff cannot show that the grill brush proximately caused her alleged injuries or that the brush was unreasonably dangerous.[57] With respect to whether the grill

---

[54] *Banks v. C.R. Bard, Inc.*, 2022 WL 17490977, at *2 (M.D. La. Dec. 7, 2022) (citing *Stewart v. Cap. Safety USA*, 867 F.3d 517, 520 (5th Cir. 2017)).
[55] *Banks*, 2022 WL 17490977, at *2.
[56] Rec. Doc. 37-2, p. 3.
[57] *Id.* at p. 5.

brush was unreasonably dangerous, Jared Tees ("Tees"), the Chef at L'Auberge Hotel, testified as Defendant PNK's corporate representative and stated that he was not aware of other alleged incidents relating to grill brush bristles at the hotel.[58] Tees testified that this type of brush is "always used" at the hotel, and he has never noticed a problem with this brush nor had he seen bristles dislodged from it.[59] Tees described the grill brush used as "sturdy."[60]

Plaintiff testified that she had received emails about "the dangers of wire brushes" used on a grill but conceded that she received these emails ten years prior to the alleged incident, and the information she received was not about CFS Brands' brushes.[61] Moreover, she testified that she did not know the type of brush used by the L'Auberge Hotel to clean the grill.[62] The Plaintiff's deposition was offered by the movant.[63] Plaintiff presented no evidence to oppose the motion. Plaintiff's assertions about the dangers of grill wire brushes generally and not the particular one manufactured by CFS Brands, is insufficient to demonstrate a factual dispute regarding the the construction, design, or the composition of the CFS grill brush. This is fatal to her LPLA claim. Accordingly, Defendant CFS Brands' motion will be granted and Plaintiff's claims against CFS shall be dismissed.

### C. Defendant PNK's Motion

Defendant PNK suggests that this case should be governed by Louisiana Revised Statute § 9:2800.6, the Merchant Liability Statute.[64] However, as Plaintiff points out, this

---

[58] Rec. Doc. 37-6, p. 29, lines 8–12.
[59] *Id.* at p. 36, lines 2–4, 10–13.
[60] *Id.* at p. 36, lines 14–16.
[61] Rec. Doc. 37-5, p. 64, lines 7–23.
[62] *Id*. at p. 47, lines 18–21.
[63] Defendants PNK and CFS Brands deposed Plaintiff and Chef Tees jointly, and each Defendant filed copies of the deposition transcripts with their motions.
[64] Rec. Doc. 38-3, pp. 6–7.

statute primarily applies to premises liability in "slip and fall" injury cases.[65] The Court agrees and finds that the facts of this case warrant application of the general negligence standard. Negligence claims are governed by Article 2315 of the Louisiana Civil Code. The Louisiana Supreme Court instructs that the duty-risk analysis in negligence claims should be used where deleterious food is involved.[66] To succeed on a claim of negligence, Plaintiff must prove (1) PNK had a duty to conform its conduct to a specific standard, (2) PNK's conduct failed to conform to the appropriate standard, (3) PNK's substandard conduct was a cause-in-fact of Plaintiff's injuries, (4) PNK's substandard conduct was a legal cause of the plaintiff's injuries, and (5) Plaintiff suffered actual damages. Plaintiff must show that it is "more likely than not that the food's deleterious condition caused the injury."[67]

---

[65] Defendant PNK cites several cases that analyze the Merchant Liability Statute, however each of these include facts related to a slip and fall injury. See *Richardson v. Louisiana-1 Gaming*, 55 So. 3d 893 (La. App. 5 Cir. 2010) (involved a plaintiff who sustained injuries when she slipped on dye on a casino floor); *Martin v. Pinnacle Ent., Inc.,* 2018 WL 2306894 (M.D. La. May 21, 2018) (involved a plaintiff who alleges she slipped on water while at the L'Auberge Hotel); *Lewis v. Jazz Casino Co., L.L.C.,* 245 So. 3d 68 (La. App. 4 Cir. 2018), *writ denied,* 252 So. 3d 877 (La. 2018) (involved a plaintiff who alleged she slipped and fell while at a casino). Furthermore, Section A of the Statute states, "[a] merchant owes a duty to person who use his premises to exercise reasonable care to keep his **aisles, passageways, and floors** in a reasonably safe condition." Section B states, "[i]n a negligent claim brought against a merchant by a person lawfully on the merchant's premises for damages as a result of an injury, death, or loss sustain **because of a fall** existing in or on a merchant's premises. . . ." Section B continues by listing the elements a claimant must prove. La. Rev. Stat. Ann. § 9:2800.6 (A) and (B) (emphasis added). The text of the statute suggests it should be applied when a slip or fall has been alleged on a defendant's premises. Consequently, the Court is not persuaded that the Merchant Liability Statute should be applied here.

[66] See *Porteous v. St. Ann's Cafe & Deli*, 713 So. 2d 454 (La. 1998) (found that the traditional duty risk tort analysis should be applied where the plaintiff ate a pearl found in an oyster po-boy and the plaintiff's tooth broke); *see also Gilyard v. Chipotle Mexican Grill Inc*., 2018 WL 2988400 (W.D. La. June 14, 2018) (found the traditional duty-risk tort analysis should be applied where the plaintiff alleged the chain restaurant operated negligently and exposed the plaintiff to H. Pylori); *see also Verrett v. Nat'l Union Fire Ins. Co. of Pittsburgh, PA*, 207 So. 3d 621, 627 (La. App. 5 Cir. 2016) ("The Louisiana Supreme Court has held that the duty-risk analysis in negligence claims governs deleterious food cases.") (citing *Porteous*, at 455).

[67] *Verrett,* 207 So. 3d at 627 (citing *Rando v. Anco Insulations Inc*.,16 So.3d 1065, 1086 (La. 2009)).

1. **Duty and Breach**

"A defendant's duty to conform his conduct to a specific standard may be express or implied, either statutorily or jurisprudentially."[68] A food provider's duty is "in selecting, preparing, and cooking food, including the removal of injurious substances, has a duty to act as would a reasonably prudent man skilled in the culinary art in the selection and preparation of food."[69] PNK does not dispute that a duty of reasonable care was owed.

When considering whether this duty has been breached, the Court considers "among other things, whether the injurious substance was natural to the food served and whether the customer would reasonably expect to find such a substance in the particular type of food."[70] Wire is not naturally occurring in the foods that Plaintiff consumed at the L,'Auberge Hotel.

At his deposition, Chef Tees testified that, before every meal service, each crew member of the kitchen is expected to inspect the equipment and the cooking surfaces to ensure they are clean and ready to be used.[71] He also testified that a "black broiler brush" is used at the restaurant to clean the grill and that this brush has been used by the restaurant since its opening in 2014.[72] He has used this type of brush at other restaurants he has worked in and has never noticed any problems with this brush nor has he seen bristles detach from it.[73] Chef Tees testified that kitchen employees are trained to visually

---

[68] *Porteous*, 713 So. 2d at 447 (citing *Faucheaux v. Terrebonne Consol. Gov't.*, 615 So.2d 289, 292 (La.1993)).
[69] *See id.* ("In Louisiana, there is no statute which expressly addresses a commercial restaurant's duty to serve food free of injurious substances. There is, nonetheless, no doubt that there is and should be such a duty. We determine that the duty is the following: A food provider, in selecting, preparing, and cooking food, including the removal of injurious substances, has a duty to act as would a reasonably prudent man skilled in the culinary art in the selection and preparation of food.").
[70] *Porteous*, 713 So. 2d at 457.
[71] Rec. Doc. 38-5, p. 22, lines 18–25.
[72] *Id.* at p. 37, line 23–p. 38, line 6.
[73] *Id.* at p. 36, lines 2–13.

inspect the food before delivery to a patron.[74] On the night of the tequila pairing party, Tees did not observe any problems in the kitchen.[75] He explained that the grill was cleaned with a brush and a cloth in between the preparation of different foods served at the event.[76] He stated that the grill was cleaned before onions were placed on the grill and cleaned again before the steak was prepared.[77] The food was prepared in "batches", and the grill was cleaned with a brush and a cloth between batches.[78]

Plaintiff testified that while at the party, she only ate the grilled corn and the steak.[79] She remembers that the steak was "tough."[80] Plaintiff testified that she never felt the wire while she was eating, but two days later she felt "excruciating" pain in her abdomen.[81] She stated that she ate one meal at the L'Auberge Hotel between the tequila pairing party and the onset of abdominal pain.[82] Once she returned home and saw her doctor, a CAT scan revealed a wire protruding from her colon.[83] She says her doctors informed her that it would have taken 24 to 48 hours for the wire to pass through her system.[84]

While Defendant PNK has testified to the extensive inspections and procedures taken by the kitchen staff to ensure food served is safely prepared, the Court finds that a factual dispute remains with respect to where and when Plaintiff ingested the wire. Plaintiff's testimony regarding her doctors' remarks constitute inadmissible hearsay and

---

[74] *Id.* at p. 41, lines 1–20.
[75] *Id.* at p. 44, lines 4–10.
[76] *Id.* at p. 52, lines 12–23.
[77] *Id.* at p. 51, lines 15–25.
[78] *Id.* at p. 52, lines 11–18.
[79] Rec. Doc. 38-4, p. 24, lines 22–24.
[80] *Id.* at p. 45, line 24.
[81] *Id.* at p. 24, line 16.
[82] *Id.* at p. 60, lines 12–p. 61, line 6.
[83] *Id.* at p. 32, lines 7–12.
[84] *Id.* at p. 45, lines 16–21.

therefore it is inappropriate to consider on this motion.[85] But, even without considering this evidence, the Court finds Plaintiff's limited food intake and the timing of her abdominal pain are enough to present a factual issue as to breach of duty. Accordingly, Defendant PNK's motion will be denied.

### D. CFS Brand's Motion for Summary Judgment on PNK's Cross Claim

In its cross claim PNK alleges that CFS Brands manufactured the broiler brush purchased by PNK and used in the restaurant.[86] Defendant PNK claims that CFS Brands marketed the brush as "very aggressive", "dishwasher safe," and "able to withstand temperatures of 500 degrees Fahrenheit."[87] PNK alleges that the "director of quality for CFS Brands" sent PNK a letter in September 2019 stating that it "manufactures its products to the highest quality standards" and that "all products are warranted against defects in materials and workmanship for a period of twelve months following the date of purchase."[88] Defendant PNK alleges breach of this "express warranty."[89] PNK asserts Plaintiff's damages were proximately caused by the brush's failure to conform to an express warranty.[90] Defendant CFS Brands moves for summary judgment to dismiss PNK's cross claim with prejudice.[91]

---

[85] The Court may consider hearsay evidence when it can be placed in an admissible form at trial. *See Ford v. Anderson Cnty., Texas*, 90 F.4th 736 (5th Cir. 2024) (explaining hearsay evidence can be considered on summary judgment "provided 'its contents can be presented in admissible form at trial'" (citing *Patel v. Tex. Tech Univ.*, 941 F.3d 743, 746 (5th Cir. 2019))). The hearsay evidence in Plaintiff's deposition testimony does not fall under this exception. *See Martin v. John W. Stone Oil Distrib., Inc.*, 819 F.2d 547, 549 (5th Cir. 1987) ("Neither the district court nor this court may properly consider hearsay evidence in affidavits and depositions.") (internal citations omitted); *see also Pena v. First State Bank of Odem*, 2019 WL 4170246, at *4 (S.D. Tex. Sept. 3, 2019) (finding deposition testimony was inadmissible hearsay because it concerned what another person told the deponent).
[86] Rec. Doc. 30, p. 2.
[87] *Id.*
[88] *Id.*
[89] *Id.* at p. 3.
[90] *Id.*
[91] Rec. Doc. 39.

PNK failed to oppose CFS Brand's motion for summary dismissal of the cross claim. Therefore, the pending motion is deemed to be unopposed.[92] Further, after reviewing the record, the Court finds that the motion has merit, particularly because CFS Brands' Statement of Uncontested Facts is uncontroverted, and the summary judgment evidence submitted supports CFS Brands' argument.

To state a viable breach of express warranty claim, PNK must demonstrate that (1) an express warranty existed, (2) they were induced to purchase the product due to the warranty, and (3) their damage was proximately caused because the express warranty was untrue.[93]

Defendant CFS Brands admits that a letter was issued in September 2019 concerning CFS Brands' products; however, CFS Brands argues this letter provided a "limited warranty" against defects.[94] The relevant portion of this letter states, "[w]hen no explicit warranty is stated, CFS Brands products have a limited warranty for all our items to be free of defects in materials or workmanship for twelve (12) months from the date of purchase. This warranty excludes damage from normal wear and tear, misuse, or abuse of the product."[95] The summary judgment evidence establishes that CFS Brands extended a limited express warranty that excluded damages resulting from normal wear and tear. Even assuming that the dislodging of a single wire was not the result of normal wear and tear, there is no summary judgment evidence that the alleged failure of the brush occurred during the 12-month warranty period. Chef Tees testified that he did not

---

[92] Local Rule 7(f).
[93] *Baudin v. AstraZeneca Pharms. LP,* 413 F. Supp. 3d 498, 510 (M.D. La. 2019) (citing La. Rev. Stat. Ann. § 9:2800.58)).
[94] Rec. Doc. 39-3, p. 2.
[95] Rec. Doc. 39-5.

know how long the brush used on May 5th had been in service.[96] Moreover, he testified that the L'Auberge Hotel has continuously purchased this type of brush since 2014 and continued to use this type of brush following the alleged incident on May 5th.[97] Tees' mere speculation that the grill brushes are replaced every three to four months[98] is insufficient to create a genuine issue of fact.

Defendant CFS Brands also argues it should not be held liable through indemnity or contribution. The Court finds that Defendant CFS Brands' arguments have merit. "State substantive law determines whether the right to contribution or indemnity and, therefore, derivative liability against a third-party defendant is available."[99] In Louisiana, contribution operates among tortfeasors who are "solidarily liable," meaning those who "conspire to commit an intentional or willful act."[100] There is no evidence suggesting Defendants CFS Brands and PNK conspired or intentionally worked together to cause the alleged incident.

With respect to indemnity, "[t]he obligation to indemnify may be express, as in a contractual provision, or may be implied in law. . . ."[101] There is nothing in the record showing Defendants CFS Brands and PNK contractually agreed to an indemnity agreement, nor does the record show that Defendant PNK's alleged fault in the alleged incident was "solely constructive or derivative" to warrant a claim for indemnity that is

---

[96] Rec. Doc. 39-4, p. 38, lines 22–25.
[97] *Id.* at p. 37, line 23–p. 38, line 6; p. 44, lines 8–10.
[98] *Id.* at p. 38, line 17.
[99] *Smallwood ex rel. T.M. v. New Orleans City*, 2015 WL 5883802, at *4 (E.D. La. Oct. 8, 2015) (citing *Gen. Dynamics Corp. v. Adams,* 340 F.2d 271, 279 (5th Cir.1965)).
[100] *Id.*
[101] *Hamway v. Braud*, 838 So. 2d 803, 806 (La. App. 1 Cir. 2002) (citing *Bienville Par. Police Jury v. U.S. Postal Serv.,* 8 F.Supp.2d 563, 569 (W.D.La. 1998)).

implied in law.[102] Accordingly, Defendant CFS Brands' unopposed motion for summary judgment on Defendant PNK's cross claim will be granted.

## III. CONCLUSION

For the reasons set forth above, Defendant PNK's Motion for Summary Judgment[103] is hereby **DENIED** and Defendant CFS Brands' Motions for Summary Judgment[104] are hereby **GRANTED**. Plaintiff's suit against CFS Brands is dismissed with prejudice. PNK's cross claim against CFS Brands is also dismissed with prejudice. The Court directs the parties to review the Scheduling Order for future deadlines and proceedings.[105]

**IT IS SO ORDERED.**

Signed in Baton Rouge, Louisiana, on this __22nd__ Day, March, 2024.

_____
**SHELLY D. DICK**
**CHIEF DISTRICT JUDGE**
**MIDDLE DISTRICT OF LOUISIANA**

---

[102] *See id.* (explaining that someone claiming indemnity must hold fault that is "solely constructive or derivative." A party "who is actually negligent or actually at fault cannot recover tort indemnity.").
[103] Rec. Doc. 38.
[104] Rec. Docs. 37, 39.
[105] Rec. Doc. 28.